IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YANG FIRE, LLC<br>6120 Utah Avenue, N.W.<br>Washington, D.C. 20015,<br><br>*Plaintiff,*<br><br>v.<br><br>NIGIST ASFAHA<br>1642 North Curson Avenue<br>Los Angeles, CA 90046,<br><br>*Defendant.* | CIVIL ACTION NO: |

## COMPLAINT

Yang Fire, LLC (hereinafter, "Yang Fire") hereby brings this Complaint against Dr. Nigist Asfaha and states:

## NATURE OF ACTION

1. This case stems from a new landlord-tenant relationship between Yang Fire and Dr. Asfaha. In August 2014, Yang Fire signed a lease to rent the building at 1414 – 9th Street, NW from Dr. Asfaha. On moving in and beginning renovations to the building, Yang Fire removed drywall and discovered the building was dangerously near collapse. Yang Fire learned the roof had been installed upside-down, and leaking water had caused major structural damage. Yang Fire also learned that the building's structure differed drastically from plans that Dr. Asfaha had provided it before Yang Fire signed the lease.

2. Pursuant to the lease, Yang Fire sought assurance from Dr. Asfaha that she would cover the cost of the necessary structural repairs. She has refused, and Yang Fire has been compelled to pay for these repairs itself. Remedial construction has delayed the opening of Yang Fire's restaurant in the space for more than six months.

3. Dr. Asfaha's actions constitute fraudulent inducement, breach of the lease, breach of the covenant of good faith and fair dealing, and breach of the covenant of quiet enjoyment. Dr. Asfaha has further been unjustly enriched by Yang Fire's repairs of the building. Her actions have caused Yang Fire to suffer compensatory and consequential damages, giving rise to this Complaint.

## THE PARTIES

4. Plaintiff Yang Fire, LLC is a Limited Liability Company organized to engage in retail food service. It is based at 6120 Utah Avenue, NW, Washington, DC 20015.

5. Defendant Nigist Asfaha is an individual citizen of California. Dr. Asfaha's home address is 1642 North Curson Avenue, Los Angeles, California 90046.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the parties are citizens of different states.

7. A substantial part of the events giving rise to the claims at issue in this case occurred in this District and venue for these claims is proper in this District pursuant to 28 U.S.C. § 1391(a).

## FACTS

8. Dr. Asfaha is the owner of the building located at 1414 – 9th Street, NW Washington, DC 20001 ("the Building").

9. In the summer of 2014, Yang Fire was looking for space to rent in which to open a Chinese-cuisine restaurant in the District.

10. At the same time, the Building was available for long-term lease.

11. Yang Fire engaged in communications with Dr. Asfaha's representatives (specifically, her broker and property manager Robert Tack) to negotiate a lease of the Building.

12. As part of these negotiations, Dr. Asfaha's property manager provided Yang Fire with information and materials concerning the Building's construction.

13. Among these materials, Mr. Tack provided Yang Fire on or about August 4, 2014 with architectural drawings purporting to accurately represent the existing structure of the Building ("the August 4 Drawings").

14. In reliance on the August 4 Drawings and other representations made by Dr. Asfaha and her agents, Yang Fire decided to enter into a long-term lease of the Building.

15. The parties entered into a commercial lease agreement ("the Lease") on or about August 28, 2014.  Under the Lease, Yang Fire was to lease the Building from Dr. Asfaha for seven years.  A copy of the Lease is attached as Exhibit A to this Complaint.

16. The Lease provides, inter alia, as follows:

> Notwithstanding anything in this agreement to the contrary, Landlord shall be responsible for maintaining the roof of the premises in good condition and repair. Landlord shall indemnify Tenant for any damage to the premises, or the furniture, fixtures and/or equipment therein, cause[d] by failure to properly maintain, repair or replace the roof, including but not limited to damage cause[d] by leaks or collapse.

Exhibit A (Lease) at 11b.

17. On moving into the Building in September 2014, Yang Fire engaged contractors to begin renovations. The first step in this process was removing drywall that blocked access to the Building's walls and ceilings. In doing so the contractors, and Yang Fire, discovered the Building was dangerously near collapse.

18. Yang Fire learned the roof had been installed upside-down, and leaking water had caused significant structural and other damage to the Building.

19. A structural engineer engaged by Yang Fire to assess the Building informed Yang Fire that the Building was not safe for use, and would require immediate and extensive remedial work.

20. In the first week of October 2014, Yang Fire notified Dr. Asfaha's property manager, Mr. Tack, of the problems.

21. Mr. Tack, who then visited the premises, informed Dr. Asfaha of the problems by telephone.

22. On October 22, 2014, Yang Fire notified Dr. Asfaha again through Mr. Tack that the leased premises were in need of new roofs, gutters, and downspouts.

23. Between October 22, 2014 and the present, at the direction of structural engineers, Yang Fire has removed more drywall and covering material to understand the scope of the problems with the Building.

24. Through this work and the work in September and October 2014 Yang Fire has learned the actual structure of the Building deviated substantially from the structure shown in the August 4 Drawings. It appears that the August 4 Drawings reflect renovation work that was never carried out on the Building.

25. One of these deviations was that a principal support beam present in the August 4 Drawings was missing in reality. The absence of this beam had resulted in dangerous sagging of a wall in the center of the structure.

26. Other deviations have included: inadequate load bearing structures (and absence thereof) on the first floor; structurally insufficient kitchen subfloor (requiring its complete replacement); and structural deficiencies around the side and rear windows (requiring their reconstruction).

27. These deviations were not apparent until Yang Fire's workers had removed the material covering the affected areas, and thus were not discovered by Yang Fire until after it had taken possession under the Lease.

28. In repeated communications with Dr. Asfaha and her agents over the last seven months, Yang Fire has explained these and other problems with the Building and set out contractors' estimates for the cost of repairs.

29. Yang Fire has conducted two walk-throughs of the Building to show Dr. Asfaha's agents, including attorneys, contractors, and structural engineers, the extent and nature of the damage requiring repair.

30. Dr. Asfaha has refused to reimburse any of Yang Fire's incurred costs.

31. Dr. Asfaha has further refused to make or pay for any of the requested ongoing or future repairs.

## COUNT I
## FRAUDULENT INDUCEMENT

32. Yang Fire repeats and realleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33. On August 4, 2014, Dr. Asfaha, acting through Mr. Tack, provided Yang Fire with documents purporting to accurately represent the existing structure of the Building.

34. The representations made in the August 4 Drawings were false because (1) they showed the presence of a key support beam which was not there in reality, (2) they showed adequate load bearing structures on the first floor which were not there in reality; (3) they showed a structurally sufficient kitchen subfloor which was not there in reality; and (4) they showed structurally sufficient side and rear windows, when the windows present in the building were not structurally sufficient.

35. Dr. Asfaha made the representations knowing them to be false, or with reckless disregard as to their truth or falsity, with the intent to fraudulently induce Yang Fire to rely on them by signing a lease for the Building.

36. Dr. Asfaha acted in bad faith, vexatiously, wantonly, and for oppressive reasons.

37. Dr. Asfaha's false representations were material to Yang Fire's decision to sign the Lease.

38. Yang Fire reasonably relied on Dr. Asfaha's representations in deciding to sign the Lease. Yang Fire did not know that the representations were false and had no reasonable independent means of ascertaining their truth or falsity, until it began to remove drywall and other masking material after taking possession of the property.

39. As a result of the newly-discovered problems not apparent in the August 4 Drawings, Yang Fire has been forced to delay the opening of its restaurant by at least six months.

40. As the direct and proximate result of reliance on Dr. Asfaha's representations, Yang Fire has sustained pecuniary injury in the form of lost profits due to delays, in excess of $100,000.

41. As the direct and proximate result of reliance on Dr. Asfaha's representations, Yang Fire has incurred costs – and faces additional costs – in structural engineers' fees, materials, and contractor fees to bring the Building up to the state it would have been in had the August 4 Drawings been accurate. These costs total in excess of $200,000, and may increase.

## COUNT II
## BREACH OF CONTRACT (LEASE)

42. Yang Fire repeats and realleges and incorporates by reference paragraphs 1 through 41 as though fully set forth herein.

43. To remedy the damage caused by improper roof work, roof maintenance, and related water damage, Yang Fire has already incurred costs in the form of structural engineers' fees and contractor charges.

44. To finish the remedial work made necessary by the improper roof work, roof maintenance, and related water damage, Yang Fire expects to incur additional costs in the form of structural engineers' fees, materials, and contractor charges.

45. The total amount of incurred and estimated costs made necessary by the improper roof work, roof maintenance, and related water damage is in excess of $160,000, and may further increase.

46. Yang Fire continues to work to complete the repairs of the premises; however, Dr. Asfaha has refused to reimburse Yang Fire for its incurred and anticipated costs.

47. Dr. Asfaha's failure to agree to reimburse Yang Fire's costs in carrying out these repairs has resulted in a delay of at least three months in completing the work necessary.

48. Due to this delay, Yang Fire has sustained a loss of business and profits in excess of $50,000. These damages continue to accrue.

## COUNT III
## UNJUST ENRICHMENT

49. Yang Fire realleges and incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

50. Since identifying the structural and roof-related problems with the Building in September 2014, Yang Fire has incurred costs to remedy them on Dr. Asfaha's behalf which were

necessary to prevent collapse of the Building.  These included costs for review of the property by structural engineers, costs for demolition of drywall and other masking to uncover structural flaws, and costs incurred to shore up the building's foundation.

51.     These costs have been in excess of $100,000 to date, and are expected to accrue.

52.     Yang Fire engaged for these tasks individuals and firms with considerable experience and expertise in the areas at issue.

53.     Over this period, Dr. Asfaha has received the benefit of Yang Fire's efforts on her behalf.  The Building, which was previously in continuing danger of collapse and was suffering continuing and exacerbating damage, is now stable and ready for further structural repair.

54.     Yang Fire has made repeated demands upon Dr. Asfaha for reimbursement of the costs it has incurred and continues to incur on Dr. Asfaha's behalf in connection with repair of the Building.

55.     Yang Fire has received no payment from Dr. Asfaha in connection with these repairs.  Dr. Asfaha continues to refuse to make any such payment.

56.     Under the circumstances, Dr. Asfaha's retention of the funds necessary to pay for the repairs would be unjust.

## COUNT IV
## BREACH OF COVENANT OF QUIET ENJOYMENT

57.     Yang Fire realleges and incorporates by reference paragraphs 1 through 56 as though fully set forth herein.

58.     A covenant of quiet enjoyment is implied in the Lease by operation of law.

59. Yang Fire was unaware of the profound structural problems with the Building before it took possession of the Building.

60. In violation of the covenant of quiet enjoyment, Yang Fire was deprived of the use and enjoyment of the Building by virtue of its unsafe condition at the time Yang Fire took possession.

61. On several occasions between October 2014 and the present, Yang Fire has sought confirmation by Dr. Asfaha that she will pay for repairs as obligated under the Lease.

62. For months Dr. Asfaha refused to provide any response to these requests.

63. On January 6, 2015, through her agent, Mr. Tack, Dr. Asfaha substantially further interfered with Yang Fire's use and enjoyment of the Building by refusing to pay for repairs to the premises.

64. This interference by Dr. Asfaha has caused delays in the execution of repairs necessary to render the Building fit for occupancy for the purpose for which Yang Fire leased it.

65. On April 10, 2015, through her attorney, Dr. Asfaha reiterated that she would not pay for the necessary repairs.

66. The need for repairs of the Building, augmented by Dr. Asfaha's failure to agree to pay for repairs, has resulted in a delay of at least six months in the opening of Yang Fire's restaurant.

67. Due to this delay, Yang Fire has sustained a loss of business and profits in excess of $100,000.  These damages continue to accrue.

68.     To render the Building fit for use, Yang Fire has incurred costs – and faces additional costs – in structural engineers' fees, materials, and contractor fees.  These costs total in excess of $200,000, and may increase.

## COUNT IV
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

69.     Yang Fire realleges and incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

70.     A covenant of good faith and fair dealing is implied in the Lease by operation of law.

71.     That covenant requires that the Building be safe for its intended use at the time of leasing.  It was not.

72.     Dr. Asfaha's handover of the Building in an unsafe condition was in bad faith, arbitrary, and capricious, and constitutes a breach of that covenant.

73.     Dr. Asfaha has further evaded the spirit of the Lease and willfully refused to perform her obligations under it.

74.     Her refusal to promptly pay for repairs has been in bad faith, arbitrary, and capricious, and constitutes a further breach of the covenant of good faith and fair dealing.

75.     As a result of Dr. Asfaha's breaches of the covenant of good faith and fair dealing in the Lease, Yang Fire's opening of its restaurant has been delayed by at least six months.

76.     Due to this delay, Yang Fire has sustained a loss of business and profits in excess of $100,000.  These damages continue to accrue.

77. Yang Fire has suffered additional losses due to Dr. Asfaha's bad faith. To render the Building fit for use, Yang Fire has incurred costs – and faces additional costs – in structural engineers' fees, materials, and contractor fees. These costs total in excess of $200,000, and may increase.

## PRAYER FOR RELIEF

WHEREFORE, Yang Fire respectfully requests that this Court:

A. Exercise jurisdiction over this action;

B. Award Yang Fire compensatory, consequential, and punitive damages, including reimbursement for repairs and damages for loss of use or interference with Yang Fire's enjoyment of the property, lost profits, and pre-judgment interest and/or earnings, in an amount to be determined at trial;

C. Grant such other and further equitable relief as the court may deem just and proper, including, but not limited to, payment of Yang Fire's reasonable costs and attorney's fees.

        Respectfully submitted,
        AEGIS LAW GROUP LLP

By:    /s/ Thomas E. Shakow
Thomas E. Shakow (DC Bar No. 470826)
Michael K. Ross (DC Bar No. 458573)
801 Pennsylvania Avenue, N.W., Suite 740
Washington, D.C. 20004
(202) 737-3500
(202) 735-5071 (facsimile)
*Counsel for Yang Fire, LLC*

April 20, 2015